## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**TINA M. HULL,**

               **Plaintiff,**         **CIVIL ACTION NO. 12-cv-14385**

     **vs.**

                           **DISTRICT JUDGE DENISE PAGE HOOD**

**COMMISSIONER OF**         **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

               **Defendant.**
_____/

### REPORT AND RECOMMENDATION

Plaintiff Tina Hull seeks judicial review of Defendant the Commissioner of Society Security's determination that she is not entitled to Social Security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Disposition (docket no. 12) and Defendant's Motion for Summary Judgment (docket no. 15). Plaintiff filed a Response to Defendant's Motion. (Docket no. 16.) The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 3.) The Court has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation pursuant to Eastern district of Michigan Local Rule 7.1(f)(2).

## I.     RECOMMENDATION:

This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 12) be DENIED and that Defendant's Motion for Summary Judgment (docket no. 15) be GRANTED.

## II.     PROCEDURAL HISTORY:

Plaintiff filed an application for Disability Insurance Benefits with a protective filing date of November 23, 2004, alleging that she had been disabled since June 26, 1998, due to a rotator cuff tear, esophageal syndrome, fibromyalgia, irritable bowel syndrome, obesity, diverticulosis, adhesive pelvic disease, sleep apnea, depression, gastroesophageal reflux disease, and osteoarthritis of the knees and hips. (*See* TR 19, 81-83.) The Social Security Administration denied benefits. (*See* TR 75-79.) Plaintiff requested a *de novo* hearing, which was held in June 2007, and after which Plaintiff's claim was denied. (*See* TR 65-74, 80, 507-41.) The Appeals Counsel reviewed Plaintiff's case and remanded the matter for a hearing before ALJ Ethel Revels, who subsequently found that Plaintiff was not entitled to benefits because there were a significant number of jobs in the national economy that Plaintiff could perform. (TR 16-27, 37-39, 542-615.) The Appeals Council declined to review the ALJ's decision (TR 5-7), and Plaintiff commenced this action for judicial review. The parties then filed their instant Motions.

## III.   PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE, AND VOCATIONAL EXPERT TESTIMONY

### A.   Plaintiff's Testimony

Plaintiff was 51 years old at the time of the administrative hearing and 39 years old at the time of alleged onset. (*See* TR 548.) Plaintiff testified that she last worked in 1996, two years before her alleged onset date, and that she dropped out of school in the 10th grade. (TR 548-49.) Plaintiff told the ALJ that she had been divorced for 20 years and that she lived with her mother. (*Id.*) At the time of the hearing, she was 5' 6" tall and weighed 317 pounds. (TR 550.) The added that she had weighed over 300 pounds since around 2001. (*Id.*) She told the ALJ that she weighed 275 to 300 pounds in 1998. (*Id.*) Plaintiff testified that she stopped working, however, because of pain from fibromyalgia and carpel tunnel syndrome. (TR 551.)

When asked about her pain, Plaintiff testified that she "hurt from head to toe." (TR 551.) She testified that the pain would start in her neck and go down through her arms, which would then go numb along with her hands. (TR 552.) She also told the ALJ that she had severe osteoarthritis in her knees, which was diagnosed in 1990 and called "severe" in or around 2000. (TR 562.) Plaintiff testified that when she went to the grocery store, she would not shop unless they had an Amigo. (TR 572.) She received injections in her knees prior to 2001. (TR 562.) And in 2007, her doctors recommended that she have both of her knees replaced, but they required that she lose 50 pounds and quit smoking before she undergo surgery. (TR 568.) Plaintiff testified that she did not lose any weight because she could not walk. (TR 570.) Plaintiff also told the ALJ that she had back problems that started sometime before 1998, which caused spasms and pain to radiate down into her legs. (TR 593-94.) She stated that her doctors did not recommend surgery and that she just took Vicodin for the pain. (TR 595-96.)

Plaintiff testified that she also suffered from Barrett's Esophagus, which caused acid reflux. (TR 559.) She acknowledged, however, that the acid reflux did not stop her from working "other than keeping [her] up at night" and adding to her fatigue. (TR 559-60.) She also stated that while she took medication, it does not help. (TR 560.) Plaintiff testified that one of her primary problems was Irritable Bowel Syndrome. (*See* TR 573.) She told the ALJ that she would, "at least once a week, mess [her] pants up because [she] cannot hold it." (*Id.*) She added that she regularly wore a pad because she got a severe e. coli infection when she tried wearing Depends. (*Id.*) She testified that her problem had been going on "for years" and that "one day a week [she would] be constipated, the rest of the week [she would] have diarrhea." (TR 574.) She added that she "can't even make it to the bathroom sometimes from my bed, from the couch." (TR 575.)

Plaintiff also told the ALJ that she had sleep apnea and that her doctors prescribed a CPAP machine.  (TR 556.)  She added, however, that the CPAP machine dried out her nostrils and made it difficult for her to breathe, so she stopped using it.  (TR 557.)  Plaintiff noted that her doctors recommended using an oxygen tank, which "possibly" would have helped her, but she never tried one.  (TR 558.)  Plaintiff further testified that she suffered from fatigue caused by her fibromyalgia and from a reaction to the medication that she took following the removal of her thyroid due to cancer.  (TR 578-81.)

Plaintiff also testified that she suffered from carpel tunnel syndrome, which started in or around 1994, and thoracic outlet syndrome.  (*See* TR 589.)  She testified that her doctors restricted her from pinching and performing any repetitive motion.  (TR 585.)  They also restricted her from raising her arms above her head or extending them to the sides.  (TR 586.)  She told the ALJ that she did not see a specialist for her CPS and that she just took Vicodin for her pain.  (TR 588.)

Finally, Plaintiff told the ALJ that she suffered from depression and anxiety.  (TR 589.)  She testified that she saw a psychiatrist for "over two and a half years" from 1995 to 1997 but that she stopped seeing her doctor when he retired.  (TR 589-91.)  She said that she had "a trust issue," so she just took Valium for her anxiety when she had a bad day.  (TR 591.)

### B.    Medical Record

Plaintiff sets forth a brief summary of her medical record including discussions of her treatment with Dr. Veronica Lorenzo from January 1998 through July 2004, her treatment with Dr. Amita Kakarla-Maganti from May 1998 through November 2004, and her treatment with Dr. Norman W. Thompson from May 2001 through March 2004.  (Docket no. 12 at 8-10.)  Defendant asserts that "[t]he ALJ provided a full discussion of the relevant evidence in this case" and does not contest any of the facts set forth by Plaintiff.  (Docket no. 15 at 8.)  Therefore, the Court, having

4

conducted an independent review of Plaintiff's medical record, hereby incorporates by reference the medical record as set forth in the ALJ's opinion (TR 19-25) and as set forth in Plaintiff's Motion (docket no. 12 at 8-10). The Court will incorporate additional comments and citations as necessary throughout this Report and Recommendation.

### C.       The Vocational Expert

The VE testified that Plaintiff's past relevant work included work as an auto assembler, which was unskilled and performed by Plaintiff at the light to medium physical demand level. (TR 601.) The ALJ asked the VE to consider a hypothetical person of Plaintiff's age, education, and vocational experience who "needs work that will allow for a sit/stand at will option[;] . . . [that is limited to] simple repetitive type tasks because there are moderate limitations in the ability to maintain concentration for extended periods . . . due to . . . pain and fatigue[;] that . . . must not be at hazardous heights or around dangerous machinery[;] that . . . must not require more than occasional climbing, kneeling, crouching, or crawling[; and that does] not require frequent, meaning not constant handling and fingering as well as no above head lifting." (TR 601-02.) The VE testified that such a person could perform work as an information clerk, an assembler, or a general office clerk, with 1,100, 1,600, and 1,200 such jobs in Southeast Michigan respectively. (TR 602.)

The ALJ asked the VE whether there were any jobs that could be performed by such an individual who was also limited to sedentary work. (*Id.*) The VE testified that such a person could perform work as a reception clerk, a sorter, or a surveillance systems monitor. (TR 602-03.) The ALJ then asked the VE to consider that the same individual also "needed work that does not require any pinching use of the hands or fine, nor fine fingering" or "frequent use of the hands." (TR 603.) The VE testified that such an individual would be precluded from work. (TR 604.) The ALJ then asked the VE to assume that the same person could hold a pen or pencil and write for a short period

of time but not on a constant basis.  (TR 607.)  The VE testified that such a person could perform work as a surveillance system monitor.  (*Id.*)  The ALJ then asked the VE to remove only the sit/stand option from the hypothetical, at which time the VE testified that such a person could also perform work as a reception clerk.  (TR 608.)

When asked, the VE acknowledged that her testimony was consistent with the Dictionary of Occupational Titles but that the DOT does not address the sit/stand option.  (TR 608.)  She added that her testimony in that regard was "based on [her] work experience."  (*Id.*)  Plaintiff's attorney then asked the VE how many days a month a person could miss without having employment problems.  (TR 609.)  The VE testified that a person could miss "[a] maximum of two days per month."  (*Id.*)

## IV.   ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the insured status requirements of the SSA through March 31, 2003; that she had not engaged in substantial gainful activity since June 26, 1998, her alleged onset date; and that she suffered from a severe rotator cuff tear and severe esophageal syndrome, fibromyalgia, irritable bowel syndrome, obesity, diverticulosis, adhesive pelvic disease, sleep apnea, depression, gastroesophageal refulx disease, and osteoarthritis of the knees and hips.  (TR 19.)  The ALJ also found that Plaintiff had "the non-severe impairment of status post thryroidectomy due to cancer."  (TR 19.)  The ALJ further found that her impairments did not meet or equal those listed in the Listing of Impairments.  (TR 19-20.)  The ALJ found, however, that Plaintiff's allegations regarding the extent of her symptoms were not wholly credible and that Plaintiff had the RFC to perform "sedentary work . . . except the claimant needs a sit/stand option at will; limited to simple repetitive type tasks because of moderate limitations in the ability to maintain concentration for extended periods due to pain and fatigue; cannot work at hazardous heights or around dangerous

machinery; no more than occasional climbing, kneeling, crouching, and crawling; no frequent, meaning not constant, handling and fingering; and no above head lifting." (TR 20-25.) The ALJ then determined, in reliance on the VE's testimony, that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 26.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from June 26, 1998, through March 31, 2003. (TR 27.)

## V.     LAW AND ANALYSIS

### A.     Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial

7

evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B.     Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

8

## C.      Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Plaintiff argues that this matter should be reversed or remanded under sentence four because (1) the ALJ erred in determining Plaintiff's credibility, (2) the ALJ's RFC failed to consider the full impact of Plaintiff's mental impairment, (3) the ALJ failed to account for Plaintiff's obesity and fibromyalgia in determining Plaintiff's RFC, and (4) the ALJ erred when she did not resolve the conflict between the VE's testimony and the DOT. (Docket no. 12 at 15-24.)

### 1.      Plaintiff's Credibility

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997). But Credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility

determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not enough to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "The adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *See id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

Plaintiff asserts that the ALJ applied the wrong legal standard because he found that Plaintiff's statements were not credible "to the extent they [were] inconsistent with the [ALJ's RFC]" instead of with the record as a whole.  (Docket no. 12 at 17-18.)  In support of this contention, Plaintiff cites to *Bjornson v. Astrue*, 671 F.3d 640, 645-46 (7th Cir. 2012), in which the court found this standard "template" unintelligible.  While the Court agrees with Plaintiff that such

10

a finding would be erroneous, and while the Court agrees with the Seventh Circuit that the template language should be clarified, the Court does not agree that the ALJ made such a finding.   The ALJ's comment refers to the RFC located in the section heading of her decision, which is analyzed therein.  Thus, when the ALJ stated that Plaintiff's limitations were not credible "to the extent they are inconsistent with the RFC," the ALJ was merely stating that she developed the RFC based on the limitations that she did find credible.   Therefore, the Court finds that the ALJ's use of this language was not contrary to law.

Plaintiff also asserts that the ALJ erred when she did not account for Plaintiff's complaints of pain and fatigue and that the ALJ "attempt[ed] to justify her credibility finding with a selective analysis of the non medical evidence" when the ALJ relied on portions of Plaintiff's functional report and did not discuss Plaintiff's medications in depth.  (*Id.* at 17-20.)  The ALJ discussed Plaintiff's credibility as follows:

> The claimant alleges that she stopped working because she was hurting from head to tow from her fibromyalgia condition, her thoracic outlet syndrome, and her carpel tunnel syndrome.   The claimant said the primary reason she could not work was because of her carpel tunnel syndrome.   The claimant has a complex history of multiple severe impairments, but there impairments are not as severe as the claimant alleges.   The claimant had complaints of sleep apnea, but she stopped using her CPAP machine because it dried out her nostrils.   Her doctor recommended that she try using straight oxygen, but the claimant did not follow-up with this recommendation.   The claimant has complained to her doctor about pain all over her body, shoulders, both knees, and elbows.   These conditions were associated with possibly fibromyalgia; however, the claimant never followed up with a specialist regarding these symptoms.
>
> The claimant has osteoarthritis of the bilateral knees, and it was suggested by her doctor that she would need total knee replacements in 2009.   However, this suggests that the knee condition was not severe enough to warrant replacement before claimant's date last insured.   The claimant does have flat feet and bone spurs that cause her foot pain, but with the use of orthotics, her doctor opined that her condition would improved significantly.    The claimant has not complied with recommendations to quit smoking and lose weight.   If the claimant were having the level of functional complaints as alleged in the hearing, one would expect consistent

11

compliance with recommended treatment and consistent follow-up on possible causes. The record indicates that the claimant is taking care of her mother, she sometimes consumes alcohol to the extent that she must seek emergency medical attention.

On the Functional Report, the claimant wrote that she has no problem completing her personal care. She can prepare meals, frozen dinners and sandwiches. The claimant wrote that she could do the dishes, laundry, sweep, and mop the floor. The claimant wrote that she could drive, she could shop in stores, she could pay bills, count change, handle a savings account, and checkbook. The claimant is still able to pursue her hobbies of fishing, watching television, and photography. This evidence is contrary to the claimant's allegations that she cannot work.

(TR 24-25.)

Contrary to Plaintiff's contention, the ALJ did not solely rely on non-medical evidence or her functional report when making his credibility determination. Instead, after thoroughly analyzing Plaintiff's subjective complaints of pain and the record as a whole, the ALJ addressed each of Plaintiff's conditions and noted that Plaintiff had either declined treatment, not complied with treatment recommendations, not followed up on treatment recommendations, or failed to seek treatment. It was only after finding that "one would expect consistent compliance with recommended treatment and consistent follow-up on possible causes" that the ALJ addressed Plaintiff's functional report, which the ALJ found was also contrary to Plaintiff's subjective complaints. The Court, therefore, finds that the ALJ gave specific reasons for finding Plaintiff's testimony not wholly credible and supported those findings with evidence in the case record. Moreover, the ALJ's findings are sufficiently specific to make clear to Plaintiff and the Court the weight giving to Plaintiff's statements and the reasons for that weight. Thus, the Court should deny Plaintiff's Motion with regard to this issue.

### 2. Plaintiff's Mental Impairment

Plaintiff asserts that the ALJ's RFC determination did not account for the ALJ's Step-2

finding that Plaintiff had "moderate difficulties" in concentration, persistence, or pace.  (Docket no. 12 at 15-16.)   When the ALJ makes a finding that a claimant has moderate limitations in concentration, persistence, or pace, the ALJ must account for such limitations in Plaintiff's RFC and in his hypothetical questions to the VE. *See Tinker v. Astrue*, No. 08-11675, 2009 WL 3064780, at *8 (E.D. Mich. Sept. 22, 2009).  Findings of moderate limitations in concentration, persistence, or pace do not necessarily preclude "simple, routine, unskilled work."  *Lewicki v. Comm'r*, No. 09-11844, 2010 WL 3905375, at *2 (E.D. Mich. Sept. 30, 2010) (citations omitted).

Courts in this district draw a distinction between cases in which a medical expert finds a moderate deficiency in concentration, persistence, or pace from those in which the ALJ independently finds such a limitation.  "When the ALJ has found such a limitation, the ALJ must incorporate these limitations into the hypothetical questions" and the RFC. *McPhee v. Comm'r*, No. 11-13399, 2013 WL 1277889, at *2 (E.D. Mich. Mar. 27, 2013) (citations omitted).  Further, "[w]here the ALJ finds that a claimant has deficiencies in concentration, persistence and pace, [the] failure to account for such deficiencies . . . constitutes reversible error."  *Kretzmer v. Comm'r*, No. 11-15623, 2012 WL 6642637, at *4 (E.D. Mich. Dec. 20, 2012) (citations omitted).

Here, the ALJ included the following limitation in Plaintiff's RFC: "[Plaintiff is] limited to simple, repetitive type tasks because of moderate limitations in the ability to maintain concentration for extended periods due to pain and fatigue."  (Docket no. 7 at 20.)  Plaintiff discussed what other courts have found in other cases in which a claimant had moderate limitations in concentration, persistence, or pace, but Plaintiff does not explain why the ALJ's finding in this case is contrary to law.  Additionally, Plaintiff implies that her limitations were "not adequately reflected" because the ALJ attributed her concentration problems to her pain and fatigue rather than her depression (*see id.* at 12), but Plaintiff does not explain what additional limitations the ALJ could have imposed based

13

2:12-cv-14385-DPH-MKM   Doc # 17   Filed 10/21/13   Pg 14 of 17   Pg ID 712

on her depression.  Therefore, the Court should deny Plaintiff's motion with regard to this issue.

### 3.    Plaintiff's Obesity and Fibromyalgia

Plaintiff asserts that the ALJ did not properly discuss how she determined the impact of Plaintiff's obesity and fibromyalgia in determining her RFC.  (*Id.* at 20-22.)  In support of this contention, Plaintiff relies on SSR 02-1p, which discusses obesity as a risk factor for work-based limitations and SSR 02-2p,[1] which discusses fibromyalgia-based limitations.  *Id.* at 20-22.

SSR 02-1p classifies individuals who have a Body Mass Index (BMI) greater to or equal to 40 as having the most "extreme" type of obesity with the greatest risk for developing obesity-related impairments.  SSR 02-1p.  In evaluating the effects of obesity, "Social Security Ruling 02-1p does not mandate a particular mode of analysis, but merely directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation."  *Nejat v. Comm'r*, 359 Fed. Appx. 574, 577 (6th Cir. 2009) (citation and internal quotation marks omitted).  SSR 12-2p does discuss the symptoms that may appear with a diagnosis of fibromyalgia, but like SSR 02-1, it does not mandate a particular mode of analysis.  "SSR 12–02p recognizes the difficulties in finding strong objective evidence of fibromyalgia and emphasizes reliance on a physician . . . who has been treating the patient for some time."  *Engquist v. Colvin*, No. 11–024552013, WL 1409923, *6 (D. Ariz. Apr. 8, 2013).

Here, the ALJ did consider Plaintiff's obesity and fibromyalgia. After addressing some preliminary questions, the ALJ began Plaintiff's hearing by addressing her weight.  (TR at 550.) She then asked Plaintiff to discuss her fibromyalgia: "Okay give me the symptoms, I want to know what you were dealing with.  Fibromyalgia is a whole range of things so let me know what your

---

[1]Although Plaintiff cites to SSR 02-02p, the language quoted by Plaintiff appears in SSR 12-2p; SSR 02-02p does not address fibromyalgia in any way.

14

symptoms were." (TR 551.) She discussed Plaintiff's need to lose weight before she could have

surgery and that she would only shop in a store if the store had an Amigo. (TR 21-22.) The ALJ

noted that Dr. James Sisson attributed Plaintiff's depression to her fibromyalgia. (TR 23.) She also

noted that Plaintiff's complaints of pain "were associated with possibly fibromyalgia," but Plaintiff

"never followed up with a specialist regarding these symptoms." (TR 24.)

The ALJ limited Plaintiff to "sedentary work . . . except [Plaintiff] needs a sit/stand option

at will . . . cannot work at hazardous heights or around dangerous machinery, [and was limited to]

no more than occasional climbing kneeling, crouching, and crawling, [and] no frequent, meaning

not constant, handling and fingering[,] and no above head lifting." (TR 20.) Like her argument with

regard to the ALJ's failure to attribute her concentration problems to her depression, Plaintiff fails

to suggest what additional limitation the ALJ should have included with regard to her obesity and

her fibromyalgia. Instead, Plaintiff argues in general that her limitations "were not accorded

sufficient effect." Thus, Plaintiff's motion should be denied with regard to this issue.

### 4.    The VE's Testimony

Plaintiff argues that the ALJ's Step-Five determination was improper because none of the

jobs described by the VE "meet the meager limitations of the RFC assessment and the ALJ failed

to explain the resolution of this conflict." (Docket no. 12 at 23-24.) SSR 00-4p provides that the

adjudicator must resolve a conflict between the DOT and the VE "before relying on the VE . . .

evidence."

Here, the ALJ engaged in the following exchange with the VE:

Q . . . Are the requirements and classifications of those jobs consistent with that of
the DOT and its companion publication the SCO?

A They are consistent with the DOT however with regard to the ability to sit and
stand while performing the job duties is not addressed by the [DOT] so that

15

information is based on my work experience.

(TR 607-08.)

Plaintiff's argument assumes that the VE's knowledge is inconsistent with the DOT. And while it is the ALJ's responsibility to "investigate the facts and develop arguments both for an against granting benefits," *Sims v. Apfel*, 530 U.S. 103, 111 (2000), Plaintiff has provided no reason that the ALJ should have assumed the VE's testimony was inaccurate or untruthful. "Nothing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct." *Id.* (quoting *Martin v. Comm'r*, 170 F. App'x 369, 374 (6th Cir. 2006)). Plaintiff and his representative had a full and fair opportunity to cross examine the VE. The ALJ did not err by failing to expand on that cross examination. Moreover, the ALJ was within his rights to rely on the VE's testimony because the Social Security regulations do not require the VE to rely on classifications in the DOT. *Wilson v. Comm'r*, No. 10-13828, 2011 WL2607098, *6 (E.D. Mich. July 1, 2011) (Cohn, J.) (citing *Conn v. Sec'y of HHS*, 51 F.3d 607, 610 (6th Cir. 1995). Therefore, Plaintiff's Motion should be denied with regard to this issue.

## VI.    CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Summary Judgment (docket no. 12) should be DENIED, and Defendant's Motion for Summary Judgment (docket no. 15) should be GRANTED.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections

16

constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: October 21, 2013          s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: October 21, 2013          s/ Lisa C. Bartlett
                                 Case Manager